O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE JOSEPH SZWEB,<br><br>                 Plaintiff,<br><br>     vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                 Defendant. | CASE NO. ED CV 13-01362 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

        Plaintiff Theodore Joseph Szweb has bad knees. But, how bad? His treating physician said that he needed replacements for both knees and could not stand for long without such "definitive treatment." The consulting physician, on the other hand, said that he could stand for 6 hours out of an 8 hour day. Giving "significant" but not "great weight" to the consulting physician [AR 22], and rejecting the opinion of the treating physician [*id.*], the Administrative Law Judge adopted this portion of the consultant's recommendation as part of Plaintiff's residual functional capacity, and found that Plaintiff was not disabled. This appeal followed.

        In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Court of Appeals described the interaction between an opinion from a consultant and an opinion from a treating physician:

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her own conclusions, the conclusions of the examining physician are not "substantial evidence."

495 F.3d at 632. The Court went on to contrast that situation with the situation where the examining physician made his own independent findings, in which case the findings can stand as substantial evidence. The Court then explained that "[i]ndependent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered . . . ." *Id.* (citations omitted).

The examining physician here made the same diagnosis as the treating physician: Plaintiff has osteoarthritis in both knees. [AR 215, 224] Both physicians found that Plaintiff was bowlegged, with a greater deformity on the right knee. [AR 215, 223] Both found crepitation in both knees [*id.*], although the examining physician described it as "non-painful" [AR 223], whereas the treating physician made no comment on whether it was painful or not. [AR 215] While the examining physician stated that Plaintiff's gait was normal [AR 222], the treating physician stated that Plaintiff had a slight start-up antalgic gait [AR 215], an observation that would be consistent with a bowlegged impairment that was more severe on one side than the other. The examining physician did perform two routine office tests, but there is no evidence in the record interpreting the tests he did perform, and the Commissioner does not argue here that those tests were either definitive or even instructive as supporting the conclusion that Plaintiff could stand for as much as six hours out of an eight hour day.[1]

---

[1] The examiner's report states that "The McMurray's sign and the Lachman's test are negative bilaterally." [AR 223] The Commissioner points to nothing in the record about the impact of these tests. The Court's lay understanding is that the McMurray's test is used to identify possible tears in either the medial or lateral meniscus. DORLAND'S MEDICAL DICTIONARY (28th ed. 1994) at 1679. The Court does
(continued...)

In short, the record did not indicate that the examining physician relied on independent findings for his opinion as to Plaintiff's residual functional capacity. Under those circumstances, the Court cannot say that his opinion furnished substantial evidence to support the Administrative Law Judge's finding. In addition, the reasons that the Administrative Law Judge gave to reject the treating physician's opinion were not sufficient. He stated that the opinions were conclusory, without adequate explanation and not based on objective data. [AR 22] He also stated that it appeared that the treating physician had examined Plaintiff only once. [*Id.*] Finally, he stated that the treating physician's opinion was not consistent with Plaintiff's activities of daily living. [*Id.*]

The Court does not see these as bases for rejecting the treating physician's opinion. The treating physician had treated Plaintiff since 2007 [AR 217], and was aware of Plaintiff's prior surgeries and efforts to address his knee problems through other modalities, such as injections. [AR 215] The treating physician concluded that Plaintiff needed knee replacements. [AR 218, 361, 362] The Administrative Law Judge does not disclose what a further examination might show, once the doctor reached that conclusion.

The Administrative Law Judge had this to say as to inconsistencies between Plaintiff's daily activities and his treating physician's opinion as to Plaintiff's capabilities:

> Despite his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including driving his children to and from school every day, running errands to the

---

[1] (...continued) not know the effect of the test especially when, as here, a party has had prior surgery on the meniscus. The Court's lay understanding is that the Lachman's test evaluates whether there is injury to the anterior cruciate ligament. J.E. SCHMIDT, ATTORNEY'S DICTIONARY OF MEDICINE v.3 at L-10 (2013). Again, there was no evidence of the significance of this test as bearing on Plaintiff's capacity to stand for a long period of time. In any event, the Court, like the Administrative Law Judge, is not a medical doctor, and cannot use its lay understanding to say whether these tests are significant for their impact on Plaintiff's ability to function. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

store, feeding the household pets, watering the lawn, making the bed, washing the dishes, doing laundry, attending his child's sporting events and cooking (Ex. 6E. p.3).  He also reported driving his father to Long Beach once a month, which is about a two-hour roundtrip drive from his house, and taking a road trip with his father just last summer where they drove all the way to Texas and back.  He further admitted he spent three hours a day reading, which is inconsistent with his allegations that he had difficulty concentrating.  Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.  The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations.

[AR 19]

An administrative law judge may reference a claimant's activities to discredit the claimant's assertions of pain — and here, the Administrative Law Judge did so and, for the same reasons, ruled that the treating physician's assessment of Plaintiff's capacity to work also was not to be trusted.  [AR 22]  Performing household chores can be a basis for discrediting pain testimony, but only if the chores are performed at a level which indicates that the physical functions could be transferable to the work place.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  That means that the evidence must show that the claimant can "work on a sustained basis," 20 C.F.R. § 404.1512(a), and he must have the residual functional capacity "for work on a regular and continuing basis." 20 C.F.R. § 404.1545(b). *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 723-24 (9th Cir. 1998); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  The list of chores that the Administrative Law Judge enumerated makes it sound as if Plaintiff is performing all of them, every day,

on a sustained basis. Yet the written exhibit which the Administrative Law Judge referenced contains many qualifiers. Plaintiff said that he could cook meals as long as he did not have to stand for more than 10 minutes; that he gets dishes or laundry done all within an hour because his knees start hurting, that he shops for small amounts of household supplies that do not require much walking or standing, and that he has limitations in lifting, walking, sitting and other activities because of his knees. [AR 181-84]. The record does not suggest that Plaintiff in fact was performing activities comparable to those during an eight-hour work day. Even the driving trip is not, on the state of the record, something that belies Plaintiff's testimony or shows an inconsistency with the doctor's opinion. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999).

In accordance with the foregoing, the decision of the Administrative Law Judge cannot be sustained. The decision therefore is reversed, and the matter is remanded to the Commissioner for further proceedings as appropriate.

IT IS SO ORDERED.

DATED: March 31, 2014

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE